IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT WINTON, | : Civil No. 3:20-cv-1479 |
| Plaintiff | : (Judge Mariani) |
| v. | : |
| C.O. ADAMS, *et al.*, | : |
| Defendants | : |

**MEMORANDUM**

Plaintiff Robert Winton ("Winton"), a state inmate, commenced this action pursuant to 42 U.S.C. § 1983, alleging that he was subjected to excessive force while being escorted to the Restricted Housing Unit of the Snyder County Prison. (Doc. 1). The matter is proceeding via a third amended complaint which names Deputy Warden Wagner, Watch Commander John Rissell, and Correctional Officers Kristofer Adams, Shawn Brown, and Troy Dunlap, as Defendants. (Doc. 69). Included in the third amended complaint are Eighth Amendment claims and state law claims. (*Id.*).

Pending before the Court is a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(d), and/or for summary judgment pursuant to Federal Rule of Civil Procedure 56, filed by Defendants Rissell, Adams, Brown, and Dunlap. (Doc. 80).

Winton failed to respond to the motion and the time for responding has now passed.[1] Therefore, the motion is deemed unopposed and the motion for summary judgment will be granted. The Court will also dismiss the action against Deputy Warden Wagner pursuant to Federal Rule of Civil Procedure 4(m).

I.   **Statement of Undisputed Facts**[2]

The escort of Winton that forms the basis of the third amended complaint occurred on October 17, 2018, at the Snyder County Prison. (Doc. 80, p. 5 ¶ 1). On October 16, 2018, the day prior to the escort at issue, Winton, while incarcerated at the Snyder County Prison, caused a disturbance and destroyed his cell in response to being informed that he was being transferred to the Restricted Housing Unit ("RHU"). (*Id.* at p. 6 ¶ 2). In the process of destroying his cell, Winton broke the toilet and obtained a sharp piece of ceramic from the broken toilet. (*Id.* at p. 6 ¶ 3). Winton refused to drop the ceramic "weapon," and as the Snyder County Prison officers entered Winton's cell to secure him, Watch

---

[1] Winton was directed to file a brief in opposition to Defendants' motion and was admonished that failure to file an opposition brief would result in Defendants' motion being deemed unopposed. (Docs. 85, 67) (citing M.D. PA. LOCAL RULE OF COURT 7.6).

[2] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues for trial. *See id.* Unless otherwise noted, the factual background herein derives from the Defendants' Rule 56.1 statement of material facts. (Doc. 80, pp. 5-10). Winton did not file a response to Defendants' statement of material facts. The Court accordingly deems the facts set forth by Defendants to be undisputed. *See* LOCAL RULE OF COURT 56.1. (*See also* Doc. 85 ¶ 2; Doc. 87 ¶ 3) (advising Winton that failure to file a responsive statement of material facts would result in the facts set forth in Defendants' statement of material facts being deemed admitted).

Commander Nazelrod was cut by the ceramic weapon held by Winton. (*Id.* at p. 6 ¶ 4). As a result, Winton was charged with aggravated assault, a violation of 18 Pa. C.S. § 2702(a), to which he pled guilty on January 4, 2019. (*Id.* at p. 6 ¶ 5).

On October 17, 2018, at approximately 7:55 a.m., Defendant Adams served Winton his breakfast at which time Winton made a statement that "it's going to happen again," which referred to the incident from October 16, 2018. (*Id.* at p. 6 ¶ 6). For making this statement, Winton was charged with threatening a staff member. (*Id.* at p. 6 ¶ 6).

On October 17, 2018, Defendant Rissell asked Winton questions following his return from Court to the Snyder County Prison, and thereafter assigned Winton to cell C-1 of the Snyder County Prison RHU. (*Id.* at p. 7 ¶ 7). On October 17, 2018, at approximately 10:50 a.m., Winton made a second comment alluding that if he was not released soon, he would assault correctional officers again. (*Id.* at p. 7 ¶ 8). Defendant Rissell only escorted Winton out of the intake area of the Snyder County Prison on October 17, 2018. (*Id.* at p. 7 ¶ 9). Defendant Rissell was not part of the detail that escorted Winton from the intake area to the Restricted Housing Unit and placed Winton in cell C-1. (*Id.*). In addition to the comment Winton made during the escort on October 17, 2018, Winton twice attempted to pull away from correctional personnel, became disruptive, attempted to turn towards the correctional personnel, and refused to follow Defendant Adams' instructions. (*Id.* at p. 7 ¶ 10). Due to Winton's actions and failure to follow instructions, Defendant Adams and Defendant Dunlap, in a good faith effort to maintain discipline and restore order, placed Winton in a kneeling

position with Winton's head face-down on the bunk in front of him. (*Id.* at pp. 7-8 ¶ 11). However, Winton attempted to get back to his feet. (*Id.*). Therefore, Defendants Adams and Dunlap placed their hands on Winton's shoulders and head to keep him from standing until Winton complied with the orders given. (*Id.*). During that time, Defendant Adams continued to give Winton orders to stop resisting. (*Id.* at p. 8 ¶ 12). After Winton ceased resisting, relaxed, and stated he would not get up, Defendants Adams and Dunlap exited Winton's cell. (*Id.* at p. 8 ¶ 13).

A video camera was not required during the escort of Winton on October 17, 2018, because it was not a planned use of force by the correctional personnel. (*Id.* at p. 8 ¶ 14).

As Watch Commander, Defendant Rissell reviewed and signed the Incident Reports that were prepared by Defendants Adams and Dunlap for October 17, 2018. (*Id.* at p. 8 ¶ 15).

Defendant, Correctional Officer Shawn Brown, was not on duty at the Snyder County Prison at the time of the escort and authorized use of force on October 17, 2018. (*Id.* at p. 8 ¶ 16). The Incident Reports from October 17, 2018 do not list Defendant Brown as being present or involved in the escort of Winton. (*Id.* at p. 9 ¶ 17).

On October 17, 2018, Winton was transferred from the Snyder County Prison to the Mifflin County Correctional Facility located in Lewistown, Pennsylvania. (*Id.* at p. 9 ¶ 18). The Mifflin County Correctional Facility, Pre-Classification Checklist Reception Checklist from October 17, 2018, does not list any injuries or reports of excessive force against

Winton even though the alleged excessive force occurred earlier that same day. (*Id.* at p. 9 ¶ 19). The Mifflin County Correctional Facility medical file for Winton makes no reference to the alleged excessive force of October 17, 2018, or injury alleged therefrom. (*Id.* at p. 9 ¶ 20). An intake photograph of Winton from October 17, 2018 does not show any injury or marks from allegedly having his face smashed into a bunk with a knee, being brutally beat with fists, receiving punches in the face and mouth, and sustaining injuries to his face and jaw. (*Id.* at p. 9 ¶ 21).

On or about October 25, 2018, Winton was transferred from the Mifflin County Correctional Facility to the State Correctional Institution at Camp Hill, Pennsylvania ("SCI-Camp Hill"). (*Id.* at p. 10 ¶ 22). Winton's SCI-Camp Hill medical records, from his intake on October 25-26, 2018, contain no reports of the alleged excessive force at the Snyder County Prison or reports of injury alleged therefrom. (*Id.* at p. 10 ¶ 23).

## II.   Legal Standard

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106

S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not

6

lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

### III. Discussion

Defendants seek an entry of summary judgment on the following grounds: (1) the facts of record contradict Winton's allegations; (2) the use of force by Defendants Adams and Dunlap does not rise to the level of excessive force; (3) Winton failed to state a failure to intervene claim against Defendants Rissell and Brown; and (4) Winton's state law claims must be dismissed. (Doc. 81, pp. 12-21).

#### A. Eighth Amendment Claims

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on prisoners. *See Wharton v. Danberg*, 854 F.3d 234, 247 (3d Cir. 2017). There are several types of Eighth Amendment claims, including claims alleging: denial of, or inadequate access to, medical care; exposure to adverse conditions of confinement; the use of excessive force; and failure to protect from assaults by other inmates. An Eighth Amendment claim includes both objective and subjective components. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Under the objective prong, the court must consider "if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation."

*Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Wilson*, 501 U.S. at 298). However, "[w]hat is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause depends upon the claim at issue." *Id.* The subjective component is met if the person or persons causing the deprivation acted with "a sufficiently culpable state of mind." *Wilson*, 501 U.S. at 298.

### 1. *Excessive Force Claim*

In an Eighth Amendment excessive force case, the inquiry "is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Not "every malevolent touch by a prison guard" violates the Constitution. *Id.* at 9. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). To establish an Eighth Amendment excessive force claim, an inmate does not need to show that he suffered a significant, or even a more than *de minimis*, injury. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). Rather, the central issue is the force used by the officer, not the resultant injury. *Flood v. Schaefer*, 439 F. App'x 179, 182 (3d Cir. 2011).

When determining whether a prison official has used excessive force, the court must consider the following factors: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted;

(4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response *Whitley*, 475 U.S. at 321; *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000).

Here, Winton's claim ultimately fails because there is insufficient evidence for a reasonable fact finder to conclude that the use of force was malicious and sadistic given the facts of this case. The undisputed facts demonstrate that Defendants Adams and Dunlap resorted to force to effect compliance only after Winton twice pulled away from Defendant Adams, became disruptive, attempted to turn towards the corrections staff, and refused to obey orders. Force was used immediately after Winton became combative and actively resisted the officers.

For the first and second *Whitley* factors, there is undisputed evidence of a need to use force, and a reasonable juror could not find that attempts to secure Winton were unreasonable or excessive. The uncontroverted record reflects that, when Winton became disruptive and refused orders, Defendants Adams and Dunlap placed Winton in a kneeling position with his face down on a bunk. Winton then attempted to standup against orders, and the correctional officers placed their hands on Winton's shoulders and head to keep him from standing up. Defendant Adams gave Winton multiple orders to stop resisting, however he did not obey. Once Winton relaxed and verbally stated he would not get up, the use of force ended, and Defendants Adams and Dunlap exited the cell.

For the third factor, the medical records confirm that Winton did not sustain any injuries as a result of the use of force incident. (Docs. 76, 77). There is no evidence that the officers were hitting Winton, such that they were intending to harm him. At his deposition, Winton testified that his only injuries were bleeding in his mouth for one hour and "a little" bruising on his wrists from hand restraints. (Doc. 81-1, p. 13, Deposition of Robert Winton). Winton has not submitted any evidence to establish that he sustained any injuries during the October 17, 2018 incident.

As to the fourth factor, there was a reasonable threat to the officers' safety, as well as the prisoner's safety. The correctional officers viewed Winton as a threat because he made two threatening statements on October 17, 2018, referring to the incident on October 16, 2018 when Winton purportedly committed aggravated assault on a Watch Commander. When officers were escorting Winton to the RHU on October 17, 2018, Winton resisted and attempted to run towards the officers. The purpose in securing Winton was to gain control over a disruptive inmate, and his subsequent resistance put his own safety, as well as the officers' safety, at risk.

As to the fifth factor, the record reflects that the force largely ceased once Winton stopped resisting. Assuming Winton had not continued to resist and did not pose a threat, the officers likely would not have continued to use force against him. Courts must bear in mind that drawing a line as to where force should cease must be approached practically, "'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision

of hindsight,' making 'allowance for the fact that [ ] officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'" *Johnson v. City of Philadelphia*, 837 F.3d 343, 350 (3d Cir. 2016) (quoting *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)).

The party adverse to summary judgment must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460 (3d Cir. 1989). Winton has wholly failed to meet this burden in that he neglected to oppose Defendants' motion for summary judgment. Despite his failure to oppose the motion, it is clear on the record that Defendants Adams and Dunlap acted in a good faith effort to restore order and discipline. Defendants Adams and Dunlap are therefore entitled to an entry of summary judgment on Winton's Eighth Amendment excessive force claim.

### 2. *Failure to Intervene Claim*

To prevail on a failure to intervene claim, a plaintiff must show: "(1) that the defendant failed or refused to intervene when a constitutional violation took place in his or her presence or with his or her knowledge; and (2) there was a 'realistic and reasonable opportunity to intervene.'" *Knight v. Walton*, No. 2:12-CV-984, 2014 WL 1316115, at *8 (W.D. Pa. Mar. 28, 2014) (quoting *Smith v. Mensinger*, 293 F.3d 641, 651 (3d Cir. 2002))


(citation omitted). The Third Circuit Court of Appeals has held that a corrections officer who fails to intervene when other officers are beating an inmate may be liable on a failure-to-protect claim if the officer had "a realistic and reasonable opportunity to intervene" and "simply refused to do so." *Smith*, 293 F.3d at 650-51.

Even assuming that Defendants Adams and Dunlap used excessive force, it does not appear that Defendant Rissell could have had any opportunity to intervene in the sudden use of force. The record establishes that Defendant Rissell assigned Winton to a cell in the RHU and only escorted Winton out of the intake area. (Doc. 81-5). The evidence also establishes that Defendant Rissell was not present during the escort of Winton to the RHU and was not present when Winton was placed in the cell where the incident occurred. (*Id.*). With respect to Defendant Brown, the record confirms that he was not working and was not in the Prison at the time of the use of force incident on October 17, 2018. (Doc. 81-7).

The uncontroverted evidence establishes that Defendants Rissell and Brown were not present during the October 17, 2018 incident and did not have a realistic and reasonable opportunity to intervene. *Smith*, 293 F.3d at 650-51. Therefore, Defendants' motion for summary judgment will be granted with respect to the failure to intervene claim.

### B.   State Law Claims

Whether to exercise supplemental jurisdiction is within the discretion of the court. Section 28 U.S.C. § 1367(c)(3) provides that district courts may decline to exercise

supplemental jurisdiction over a state law claim if the district court has dismissed all claims over which it has original jurisdiction. When deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cahill*, 484 U.S. 343, 350 (1988)). "[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)). Following thorough considerations of judicial economy, convenience, and fairness, the Court declines to exercise supplemental jurisdiction over Winton's state law claims.

## IV. Federal Rule of Civil Procedure 4(m)

Rule 4(m) sets forth the following time frame a plaintiff has to serve a defendant with the summons and copy of the complaint:

> If a defendant is not served within 90 days after the complaint is filed, the court -- on motion or on its own after notice to the plaintiff -- must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m). Defendant Deputy Warden Wagner was named in the original complaint that was filed on August 15, 2020 and, to date, has not been served in this case. The Court must engage in a two-step process in determining whether to dismiss the non-served Defendant or grant Winton additional time to effect service. "First, the district court should determine whether good cause exists for an extension of time. If good cause is present, the district court must extend time for service and the inquiry is ended. If, however, good cause does not exist, the court may in its discretion decide whether to dismiss the case without prejudice or extend time for service." *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir. 1995). Good cause requires good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance with the time specified in the rules. *MCI Telecomm. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995). In determining whether good cause exists, a court's "primary focus is on the plaintiff's reasons for not complying with the time limit in the first place." *Id.* Although prejudice is a factor to be considered, the absence of prejudice to the opposing party alone does not constitute good cause to excuse late service. *Id.*

In the present matter, Winton failed to establish good cause. After the expiration of the ninety-day time period set forth in Rule 4(m), the Court notified Winton that the action against Defendant Wagner was subject to dismissal and directed him to show cause why the action against this Defendant should not be dismissed pursuant to Rule 4(m). (Doc. 39). In response to the show cause order, Winton claims that a fellow inmate was filing court

14

documents on his behalf, and he requests additional time to effectuate service. (Doc. 43). Winton's reason is a deflection, not a good faith explanation. Winton's *pro se* status is not good cause to excuse his failure to timely serve these Defendants. *Veal v. United States*, 84 F. App'x 253, 256 (3d Cir. 2004). Based upon the lack of any reasonable explanation for his failure to adhere to the requirements of Rule 4, the Court finds that Winton failed to establish good cause.

If a plaintiff cannot show good cause for his failure to serve the defendant within ninety days, a district court may either dismiss the defendant, or exercise its discretion to order that service be made within a specific time. *Petrucelli*, 46 F.3d at 1305; *see also* FED. R. CIV. P. 4(m). It is Winton's responsibility to properly identify all defendants, and provide accurate mailing addresses for the defendants, in a timely fashion. (*See* Doc. 9 ¶ 8; Doc. 68 ¶ 5) (advising Winton that failure to properly name a defendant, or provide an accurate mailing address for a defendant, may result in dismissal of the claims against that defendant pursuant to Federal Rule of Civil Procedure 4(m)).

In light of Winton's lack of good faith effort to serve Defendant Wagner despite this Court's warning of the possible consequences, including dismissal, the Court concludes that dismissal is appropriate under the present circumstances. Accordingly, the non-served Defendant will be dismissed from this action.

## V.     Conclusion

Based on the foregoing, the Court will grant the motion (Doc. 80) filed by Defendants Rissell, Adams, Brown, and Dunlap, and enter judgment in their favor. The action against Deputy Warden Wagner will be dismissed pursuant to Federal Rule of Civil Procedure 4(m).

A separate Order shall issue.

_____
Robert D. Mariani
United States District Judge

Dated: November 23, 2022